UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INNOVASYSTEMS, INC.,                  :   HONORABLE JOSEPH E. IRENAS
                                      :   CIVIL ACTION NO. 13-05077
              Plaintiff,              :
                                      :          **OPINION**
      v.                              :
                                      :
PROVERIS SCIENTIFIC CORPORATION,      :
                                      :
              Defendant.              :

**APPEARANCES:**

FOX ROTHSCHILD LLP
By:  Samuel H. Israel, Esq.
2000 Market Street
Philadelphia, PA 19103
          Counsel for Plaintiff Innovasystems, Inc.

GREENBERG TRAURIG LLP
By:  Alan J. Brody, Esq.
200 Park Avenue
Florham Park, NJ 07932
          Counsel for Defendant Proveris Scientific Corporation

**IRENAS**, Senior District Judge:

    This unfair trade dispute comes before the Court on

Defendant Proveris Scientific Corporation's ("Proveris") motion

to dismiss Plaintiff Innovasystems, Inc.'s ("Innova") amended

complaint ("Complaint").[1]

    Innova, a debtor in possession, alleges Proveris published

defamatory statements about its financial stability and

------------------------------------------------------------

[1] Proveris moves under Fed. R. Civ. P. 12(b)(6).  The Court has
subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).

intellectual property, thereby violating New Jersey statutory and common law, the Lanham Act, and title 11's automatic stay. Proveris responds by arguing that its statements were truthful and thus not actionable under any theory of liability. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.

The parties both specialize in the design and manufacture of laboratory equipment used to test aerosol drug delivery products. They are the only domestic suppliers for the market, and, consequently, compete over a limited universe of prospective customers.

The instant dispute originated in 2005. Proveris sued Innova for patent infringement, claiming Innova's Optical Spray Analyzer ("OSA") infringed United States Patent No. 6,785,400 (the "'400 patent").

Innova attempted to defend against the allegations on invalidity grounds, but the Massachusetts District Court struck the company's patent validity expert. Innova consequently conceded infringement on nine of the 11 claims and proceeded to trial. (Compl. ¶ 14) A jury found (i) Innova did not infringe the remaining claims, (ii) Innova's conceded infringement was

2

not willful, and (iii) Proveris was not deserving of any damages. The District Court permanently enjoined Innova from manufacturing and marketing the OSA (the "Injunction"). (Id. ¶ 15)

Innova developed a new iteration of the OSA it believed did not violate the Injunction: the Aerosol Drug Spray Analyzer ("ADSA").

Proveris, however, again sued for infringement, this time moving for contempt sanctions. (Compl. ¶ 17) On September 21, 2010, the District Court entered summary judgment in Proveris's favor. (Id. ¶ 18) A trial to determine damages was scheduled for a year later.

Zachary Pitluk, a Proveris employee, began notifying prospective customers of the ruling via email. He wrote to one pharmaceutical executive that "[c]ontempt is a rare and almost always fatal condition for small business." (Compl. ¶ 21(e)) Five days later, he wrote another: "Innova is looking at a lot of expenses in legal costs, >$1 million, and their longevity is in doubt." (Id. ¶ 21(f))

In several other emails, Pitluk asserted that Innova faced criminal liability, (Compl. ¶ 21(b) ("Innova was found to be in contempt of court, which is a very serious crime.")), and infringed yet further patents, (id. ¶¶ 21(d)-(e), 22 (writing

3

that "Innova's electromechanical actuator" "infringes" additional Proveris patents, and Proveris "will be pursuing that [infringement] next."). Innova alleges these statements damaged its goodwill.

On the eve of the parties' damages trial, Innova filed a voluntary petition for relief under Chapter 11. (Compl. ¶ 25) Although Innova continued to operate as a debtor-in-possession, the filing allegedly "reenergized" Proveris's campaign to "convince" prospective customers "that Innova was going out of business." (Compl. ¶ 26)

Pitluk embarked on a second round of emails: on September 16, 2011, he wrote a pharmaceutical executive that Innova had filed for bankruptcy and had "very limited cash on hand." (Id. 21(l)) To another, he wrote that the bankruptcy filing "could lead to a potential interruption" in Innova servicing. (Id. ¶ 21(k))

In one email, sent to an overseas client, Pitluk implied that the Injunction prevented international sales—an assertion Innova strongly contests. (Compl. ¶ 21(u))

During the immediate aftermath "of this new round of false statements," one Innova customer canceled a $400,000 purchase order. (Compl. ¶ 27) Two distributors stopped selling Innova products. (Id. ¶ 28)

4

In late 2012, with its bankruptcy proceedings ongoing, Innova moved the bankruptcy court for discovery on whether Proveris was publishing defamatory statements.[2]  The Court granted the motion and required Proveris to turn over certain documentary evidence.  The Pitluk emails were included therein.

Innova subsequently filed its original complaint in the instant matter.  Proveris's pending motion soon followed.[3]

## II.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in

---

[2] The parties have not identified the exact date on which discovery was obtained, but it appears to be either late 2012 or early 2013.

[3] Innova filed the original complaint in the United States Bankruptcy Court, District of New Jersey.  Pursuant to 28 U.S.C. § 157(d), Proveris moved the Court to withdraw the matter's reference to the Bankruptcy Court.  (See Dkt. No. 1)  The Court granted Proveris's motion, and further granted the parties' request to redact the names of certain prospective customers. See Innovasystems, Inc. v. Proveris Scientific Corp., Civ. No. 13-5077, 2014 WL 5539288 (D.N.J. Oct. 7, 2013).

the complaint as true and view them in the light most favorable to the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." See id. at 570; see also Umland v. PLANCO Fin. Serv., Inc., 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 663–64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). While "[t]he

plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." Id. at 678.

## III.

Although its claims sound, in essence, in defamation, Innova brings the full panoply of business torts: (A) defamation; (B) trade libel and disparagement; (C) tortious interference with prospective economic gain and contractual relations; (D) violation of § 43(a) of the Lanham Act; and (E) false advertising/unfair competition.  Innova also alleges that (F) Proveris violated the automatic stay imposed by 11 U.S.C. § 362(a)(3).

Because the falsity of some of Proveris's statements crosses the threshold of illegality, certain of Innova's claims may proceed.  However, the bulk of the accusations fail to set forth cognizable claims for relief, and consequently will be dismissed.  The Court addresses each cause of action in turn.

## A.

Innova's defamation claim rests on the falsity of four factual assertions: (i) Innova is going out of business; (ii) its actuator infringes a Proveris patent other than the '400;

7

(iii) its finding of contempt is criminal in nature; and (iv) the Injunction prohibits overseas sales.[4]

### 1.

Innova argues that Proveris's assertions in September 2011 that Innova "was going out of business" were false and defamatory. (Compl. ¶ 26; Opp'n Br. at 24-28)  The Court disagrees.

To establish defamation under New Jersey law, a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff; (2) communicated the statement to a third party; and (3) had a sufficient degree of

---

[4] Although Innova sets forth 21 allegedly defamatory statements, New Jersey's statute of limitations for libel and slander claims renders only ten of them actionable.

Under N.J.S.A. 2A:14-3, "Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." The statute is "strictly construed." Miele v. Rosenblum, 254 N.J. Super. 8, 12 (App. Div. 1991).

Furthermore, "Under 11 U.S.C. § 108(a), when a debtor files a bankruptcy petition, the statute of limitations for all claims not then barred is extended for two years." Cantor v. Perelman, 414 F.3d 430, 440 (3d Cir. 2005); Kaliner v. MDC Systems Corp., LLC, Civ. No. 09-00005, 2011 WL 203872, at *10 n. 14 (E.D.Pa. Jan. 20, 2011).

Applying these calculations to the instant facts, it is evident that only those statements made between September 3, 2010 and September 2, 2011, and April 19, 2012 and April 18, 2013 are actionable under defamation. Innova alleges 10 such statements. (See Compl. ¶¶ 21(a)-(l), 21(u), 22-24)

fault.[5] <u>Singer v. Beach Trading Co.</u>, 379 N.J. Super. 63, 79 (App. Div. 2005).

Whether a statement is defamatory depends on "its content, verifiability, and context." <u>Lynch v. N.J. Educ. Assoc.</u>, 161 N.J. 152, 167, (1999). To qualify as a defamatory statement, the truth of the statement must be verifiable. <u>Id.</u>

Statements on future conduct are not verifiable unless they "imply false underlying objective facts." <u>Lynch</u>, 161 N.J. at 167 (citing Restatement (Second) of Torts § 566).

To the extent Pitluk's assertion that Innova is going out of business implicates a verifiable object fact, it is that Innova is in a weakened financial positon. Such an implication, however, is accurate and appropriate in light of a company's bankruptcy filing. To the extent Proveris overstated the financial vulnerability of Innova, it was to an insufficient degree to render the assertion false. Consequently, those claims based on Innova's assertion that Proveris is going out of business will be dismissed.

---

[5] New Jersey does not require a claimant to either prove or plead that she was damaged by the defamatory statement because "reparation is not the only focus of the system": New Jersey law clearly identifies deterrence as an important element." <u>W.J.A. v. D.A.</u>, 210 N.J. 229, 247 (2012) (upholding the legal doctrines of presumed and nominal damages for defamation).

**2.**

In September 2010, Proveris emailed a prospective client and wrote that Innova's "electric actuator . . . violates [Proveris's] IP . . . ." (Compl. ¶ 21(e))  Innova now claims the statement constitutes libel.

The parties disagree over what level of fault is required for the statement to be actionable.  Innova argues it need only allege that the statement was made negligently.  Proveris argues Innova must allege Pitluk wrote maliciously.  The Court agrees with Proveris.  Two reasons animate the Court's ruling.

First, for matters involving public concern, a libel claimant must allege the statement was written maliciously. Mayflower Transit, LLC v. Prince, 314 F. Supp. 2d 362, 372 (D.N.J. 2004) ("the actual malice standard [] applies to private plaintiffs where the allegedly defamatory articles relate to a legitimate matter of public concern").  Allegations of infringement are matters of public concern.  See Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709-10 (7th Cir. 1992)(noting that it is "not an actionable wrong for one in good faith" to notify "whomsoever" of possible infringement, and that "an accused infringer" should not be "insulated from knowledge and fair warning of potential liability.")  Consequently, the content of the allegation counsels that the malice standard be

applied.

Second, Proveris's statement seeks to denigrate a particular good: Innova's electromechanical actuator. Such a claim more accurately sounds in trade libel than defamation. Mayflower Transit, LLC, 314 F. Supp. 2d at 377 ("Defamation of a corporation injures the reputation of the corporation; [trade libel] injures the reputation of its products."). Claims of trade libel, however, must include allegations that the statements were made maliciously. System Operations. Inc. v. Scientific Games Dev. Corp., 555 F.2d1 131, 1140 (3d Cir. 1977). And it would be unfair for Innova to evade a more rigid pleading requirement simply by entitling its claim as "libel." Consequently, it follows that here, Innova's claim should be analyzed under a malice standard.

Innova's complaint fails to meet this heightened burden.

Actual malice means that the speaker "knew the statement to be false or acted in reckless disregard of its truth or falsity." Durando v. Nutley Sun, 209 N.J. 235, 251 (2012). "At the pleading stage, a plaintiff alleging defamation with actual malice must plead facts from which malice might reasonably be inferred." Moriarty v. Classic Auto Group, Inc., Civ. No. 13-5222, 2014 WL 2601887, at *5 (D.N.J. June 11, 2014); see also Schatz v. Republican State Leadership Committee, 669 F.3d 50, 58

(1st Cir. 2012) ("Sure, malice is not a matter that requires particularity in pleading—like other states of mind, it may be alleged generally. But, to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred—even in a world with Twombly and Iqbal."); Harris v. Zyskowski, Civ. No. 12-7191, 2013 WL 6669186, at *6 (D.N.J. Dec. 18, 2013) (dismissing complaint because "there are no facts from which 'malice' could be inferred")

Innova pleads no facts that allow an inference of malice. The only averment provided is that Proveris "knew that the only finding of infringement against Innova made by any court related to a Proveris patent involved a spray pattern analyzer device, and not an actuator." (Compl. ¶ 22)

But Innova misinterprets the allegedly defamatory statement. Proveris did not imply that the District Court already found the electromechanical actuator violative of the '400 patent. Rather, Proveris implied that Proveris will seek, in the future, a finding that the actuator infringes a different patent of Proveris's. (See Compl. ¶ 21(e) (alleging that Pitluk told a prospective customer that Proveris "will be pursuing [the actuator] next." (Compl. 21(e))

In sum, the amended complaint is devoid of factual

12

assertions from which one can infer that the infringement allegation was made with malice, and thus Innova's claim must be dismissed.[6]

### 3.

Innova alleges that Pitluk's assertion that Innova's contempt ruling "is a very serious crime" is defamatory.  (Compl. ¶ 21(b))  The Court agrees.

Courts place great importance on precluding inaccurate accusations of criminal liability, as evidenced by the fact that the imputation of a criminal offense to another constitutes slander per se, whereby a plaintiff need not prove any form of actual damage to his reputation.  Moriarty v. Classic Auto Group, Inc., Civ. No. 13-5222, 2014 WL 884761, at *4 (D.N.J. Mar. 6, 2014); NuWave Inv. Corp. v. Hyman Beck & Co., Inc., 432 N.J. uper. 539, 554 (App. Div. 2013).

Innova's complaint alleges that Pitluk asserted that Innova was guilty of a criminal offense, even though the litigation was purely between competitors.  As Innova has alleged the false

_____

[6] Perhaps realizing this deficiency, Innova asserts in its opposition brief that malice is evident from the fact that Proveris has never shied away from prosecuting infringement claims, and yet no suit has ever been brought over the electromechanical actuator.  Such an assertion, however, is inappropriate in a memorandum of law, and insufficient in itself.

13

imputation of a criminal offense, its claim will proceed.

### 4.

On May 1, 2012, Pitluk emailed a prospective customer in India and wrote "Innova has been found guilty of contempt of court of Federal judge Roberts order [sic] to stop selling, promoting, manufacturing or marketing the infringing ADSA system." (Compl. ¶ 21(u))  Innova claims the email inaccurately implicated that the Injunction prohibited sales of the ADSA when manufactured and sold abroad.  (See also Compl. ¶ 23)

Proveris argues that the Injunction in fact precluded overseas manufacturing, and thus any implication to be drawn from the email is accurate.  In support of its argument, Proveris submits an excerpt of a transcript taken from a hearing before the District Court that issued the Injunction.

Because the Court is obligated to evaluate only the four corners of a complaint upon a motion to dismiss, it will not consider the submitted transcript.  Byrd v. Aaron's, Inc., --- F. Supp. 2d ----, 2014 WL 1327503, at *21 n. 15 (W.D.Pa. Mar. 31, 2014) (A "[c]ourt must limit its review on a motion to dismiss to the allegations of the complaint.  Unless the court converts a motion to dismiss into a motion for summary judgment, it is generally confined to the four corners of the complaint.")

14

(quotations omitted).  And because without the transcript the
Court has no grounds on which to rule that the statement is
truthful, Proveris's motion as to this claim will be denied.


**B.**

In addition to its claim for defamation, Innova brings a
claim for trade libel.  Innova's claim, however, must be
dismissed.

To allege a claim for trade libel, a claimant must allege:
(1) publication; (2) with malice; (3) of false allegations
concerning its property, product, or business; and (4) special
damages, i.e. pecuniary harm.  See, e.g., System Operations. Inc.
v. Scientific Games Dev. Corp., 555 F.2dl 131, 1140 (3d Cir.
1977).  The requirement that special damages be alleged is one
way trade libel and defamation are distinguished.  Patel v.
Soriano, 369 N.J. Super. 192, 247 (App. Div. 2004).

In Innova's Amended Complaint, the only special damages
alleged is the loss of a $400,000 purchase order for an Innova
product, and the decisions of two Innova distributors to "refuse
to continue distributing Innova's products."  (Compl. ¶¶ 27-28)

The Amended Complaint is clear, however, that these damages
occurred "[d]uring the immediate aftermath of [Proveris's] new
round of false statements" that Innova "was going out of

15

business." (Comp. ¶¶ 26-27)

As set forth <u>supra</u>, § III. A.2., such assertions were not false in light of Innova's bankruptcy filing. Consequently, Innova does not allege a false allegation that caused pecuniary harm, and thus fails to plead a cognizable claim for trade libel.

**c.**

Innova repackages its trade libel claim as one for tortious interference with economic gain. Its new iteration meets a similar fate.

Tortious interference with business advantage requires proof of: (1) the plaintiff's existing or reasonable expectation of economic advantage; (2) the defendant's knowledge of that expectancy; (3) interference by the defendant done intentionally and with malice; (4) a causal connection between the interference and the loss of prospective gain; and (5) actual damages. <u>Varallo v. Hammon Inc.</u>, 94 F.3d 842, 848 (3d Cir. 1996).

In its opposition brief, Innova argues that the cancellation of the $400,000 purchase order and the fact "at least two Innova distributors" refused to distribute Innova products constitute actual damages sufficient to support its

16

tortious interference claims.  (Opp'n Br. at 34)  But as indicated supra, the cause of these losses was the transmission of truthful information: the weakened financial position of Innova.  Consequently, Innova did not allege that it was actually damaged by Proveris's malicious conduct.  Accordingly, its claim for tortious interference must be dismissed.

## D.

Innova alleges the statements (i) Innova was going out of business, and (ii) Innova's actuator infringed Proveris's intellectual property, violate § 43(a)(1)(B) of the Lanham Act.  (Opp'n Br. at 8-10)  Because these statements were not contained in a commericial advertisement or promotion, the claims will be dismissed.

In pertinent part, Section 43 of the Lanham Act prohibits the use of any communication "in commercial advertising or promotion [that] misrepresents the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

To plead a claim under § 43(a), a claimant must allege that (a) defendant made a false or misleading statement in a commercial advertisement or promotion about its own or the claimant's product or service; (b) the statement actually

deceived or at least had a tendency to deceive a substantial
portion of the intended audience; (c) the deception was material
in that it likely influenced purchasing decisions; (d) the
advertised product traveled in interstate commerce; and (e) the
claimant was likely to be or was injured by the false or
misleading statement. Ditri v. Coldwell Banker Residential
Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992); U.S.
Healthcare v. Blue Cross of Gr. Philadelphia, 898 F.2d 914, 922-
23 (3d Cir. 1990).

The Lanham Act's commercial disparagement provision is
aimed at specific forms of communications. First Health Group
Corp. v. BCE Emergis Corp., 269 F.3d 800, 803-04 (7th Cir.
2001); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th
Cir. 1996); Gordon & Breach Sci. Publishers v. Am. Inst. of
Physics, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994). Although the
statute covers more than a classic advertising campaign, the
communications must be "disseminated sufficiently to the
relevant purchasing public to constitute advertising or
promotion within that industry." New Jersey Physicians Untied
Reciprocal Exch. v. Boynton, Inc., Civ. No. 12-5610, 2014 WL
317179, at *5 (D.N.J. Jan. 28, 2014). Communications that
"target . . . merely particular individuals" will not suffice.
New Jersey Physicians Untied Reciprocal Exch., 2014 WL 317179,

18

at *5, n.1 (quoting <u>Podiatrist Ass'n, Inc. v. La Cruz Azul De
Puerto Rico, Inc.</u>, 332 F.3d 6, 19 (1st Cir. 2003)).

Innova's Amended Complaint alleges just that: that an
employee of Proveris emailed particular individuals with whom
Proveris sought to do business. Because these emails do not
constitute the type of advertisements or promotions the Lanham
Act regulates, Innova's claim must be dismissed.[7]

<strong>E.</strong>

Innova alleges Proveris's statements further render the
company liable for unfair competition under New Jersey common
law. Proveris argues the cause of action is inapposite and must
be dismissed. The Court agrees with Proveris.

New Jersey's "law of unfair competition is an amorphous
area of jurisprudence." <u>New Jersey Optometric Ass'n v. Hillman-
Kohan Eyeglasses, Inc.</u>, 144 N.J. Super. 411, 427, 365 A.2d 956
(Ch. Div. 1976). "[T]he tendency of the law in this area 'has
been in the direction of enforcing increasingly higher standards

---

[7] Innova also brings a false advertising and unfair competition
claim in violation of New Jersey Fair Trade Act, N.J.S.A. 56:4-
1. (Compl. ¶¶ 56-69) Because Innova does not differentiate
between its claim under the New Jersey statute and its federal
claim, its New Jersey claim will be dismissed as well. (Opp'n
Br. at 21 ("For the same reasons that Innova has stated a claim
under the Lanham Act, it has stated a claim under the New Jersey
Fair Trade Act.")

of fairness or commercial morality in trade.'" <u>Q-Tips, Inc. v.</u>
<u>Johnson & Johnson</u>, 206 F.2d 144, 145 (3d Cir. 1953) (quoting
Restatement, Torts, Vol. III, P. 540).  The prototypical case is
where one supplier sells another's goods as his own, referred to
as "palming off."

Despite its "amorphous" and expansive breadth, the cause of
action has boundaries: "it consists of the misappropriation of
one's property by another—or property which has some sort of
commercial or pecuniary value." <u>Duffy v. Charles Schwab & Co.,</u>
<u>Inc.</u>, 97 F. Supp. 2d 592, 601 (D.N.J. 2000).

Innova has clearly not set forth such a claim here.  To the
extent Innova alleges Proveris misappropriated anything of
value, it was the prospective business relationships with which
Proveris interfered.  <u>See</u> infra, § III. F.  However, such a
theory does not constitute a claim for unfair competition, but
rather an additional attempt to advance a defamation/trade libel
claim under the banner of an inapposite business tort.
Accordingly, Innova's claim will be dismissed.

**F.**

Lastly, Innova alleges that Proveris violated the automatic
stay triggered by the bankruptcy filing.[8]  (Compl. ¶¶ 121-139)

---

[8] Innova claims Pitluk's e-mails stating that "Innova would be

20

The statute providing for the stay, 11 U.S.C. § 362(k)(1), states: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Thus, the "provisions of the statute come into effect" upon a claimant's showing that "(1) a violation of the automatic stay has occurred; (2) the violation was willful; and (3) the willful violation has caused injury to the debtors." In re Wingard, 382 B.R. 892, 900 (Bankr. W.D.Pa. 2008).

Innova alleges that in the days following its bankruptcy filing, Pitluk contacted Innova customers and told them that possible interruptions with Innova-product servicing may arise, Innova has "very limited cash on hand," and Innova is "very vulnerable" to going out of business. (Compl. ¶¶ 21(j)-(u)) Innova further alleges that because of these communications, the company lost a $400,000 sales order and two distributors chose not to carry Innova products. (Id. ¶¶ 27, 28)

In sum, Innova alleges that Proveris willfully sought to violate the stay, and that Innova was damaged thereby.[9]

_____

going out of business, that its president was guilty of a federal crime and would be going to jail, and that Innova is liable for patent infringement for another device not subject to the contempt order" render Proveris liable. (Opp'n Br. at 36)
[9] The Court notes that while Innova will have to prove that the

21

Consequently, Proveris's motion will be denied as to this claim.

## IV.

For the reasons given above, Proveris's motion to dismiss will be granted in part and denied in part. Innova's claims for (i) trade libel and disparagement; (ii) tortious interference with prospective economic gain and contractual relations; (iii) violation of § 43(a) of the Lanham Act; and (iv) false advertising/unfair competition will be dismissed. Innova's claim that Proveris violated the automatic stay may proceed. To the extent Innova's defamation claim is based upon fallacious allegations of criminal liability or an inaccurate description of the Injunction, it may proceed. To the extent the claim is based upon Proveris's statements that Innova is going out of business or Innova's actuator infringes Proveris IP, the claim will be dismissed. An appropriate order accompanies this opinion.

Date: August _0_, 2014

_____

JOSEPH E. IRENAS
Senior United States District Judge

_____

statements made by Proveris, and not the underlying bankruptcy, caused Innova's damages, no such requirement is applied here.

22